IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ALPHONZO CRAIGHEAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10cv981 (JCC/JFA) |
| ) | |
| NISSAN MOTOR ACCEPTANCE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on defendant Nissan Motor Acceptance Corporation's Motion to Dismiss [Dkt. 15] plaintiff Alphonzo Craighead's Second Amended Complaint [Dkt. 14] for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court will grant Defendant's Motion to Dismiss.

**I.  Background**

This matter arises out of the June 5, 2005 purchase of a motor vehicle by plaintiff Alphonzo Craighead ("Plaintiff"), the financing for which was provided by defendant Nissan Motor Acceptance Corporation ("Defendant") (Second Amended Complaint ("Compl.") at 1.)  Plaintiff's Second Amended Complaint (the "Complaint") alleges the following causes of action: (1) defamation, (2) violations of the Fair Credit Reporting Act (the

"FCRA"), 12 U.S.C. § 1681, *et seq.*, (3) breach of contract, (4) negligence,[1] and (5) violations of the Virginia Consumer Protection Act (the "VCPA"), Va. Code § 59.1-200(14). (Compl. at 1.)

### A. Background

On June 5, 2005, Plaintiff purchased a Nissan 350Z from Rosenthal Nissan/Mazda in Vienna, Virginia, for a net unpaid purchase price of $38,287.40, including all fees, taxes, etc. (Compl. at 1; P. Ex.[2] A.) Plaintiff financed this purchase through a loan provided by Defendant and serviced by M&T Credit Services, LLC, in the "amount financed" of $38,332.40, at an annual percentage rate of 7.90 percent (the "NMAC Loan"), and evidenced by a non-negotiable consumer note dated June 5, 2005. (P. Exs. A, B.) The first payment on the NMAC Loan was due July 20, 2005, in the amount of $672.50, with payments in the same amount due monthly thereafter for 72 months. (P. Ex. B)

According to the Complaint, in June 2005, Plaintiff contacted the United Services Automobile Association (the "USAA") to purchase an insurance policy on his vehicle. (Compl. at 1.) USAA offered Plaintiff a loan at a more favorable interest rate, and Plaintiff accepted the offer (the "USAA Loan"). (Compl. at 1.) On July 6, 2005, Plaintiff contacted Defendant to obtain the payoff amount for the NMAC Loan. (Compl. at 1.) A

---

1 In Open Court, Plaintiff conceded his negligence claim. Accordingly, that claim will be dismissed with prejudice.

representative of Defendant informed Plaintiff that the payoff amount at that time was $36,313.40, and that the effective date of the payment would be July 16, 2005. (Compl. at 1.) Plaintiff was also told that the payoff effective date and amount would be good for 10 days, until July 26, 2005. (Compl. at 1.)

Plaintiff informed USAA as to the outstanding amount of the NMAC Loan, and USAA executed a check dated July 15, 2005, in the amount of $36,313.40 to the order of Defendant with a memorandum line stating "payoff account . . . Alphonzo Craighead." (Compl. at 1; P. Ex. D.) Defendant deposited the check on July 21, 2005. (P. Ex. D.) Sometime later, Plaintiff received a phone call stating that the payoff amount was almost $400.00 short. (Compl. at 1.) Plaintiff requested that USAA pay the additional amount, and in the meantime paid that sum himself. (Compl. at 1.) Defendant received the check on September 12, 2005. (Compl. at 1.)

In 2008, Plaintiff reviewed his credit report and noticed that Defendant reported to the credit reporting agencies that Plaintiff had been past-due on his July 2005 and August 2005 NMAC Loan payments. (Compl. at 1.) To remedy this, Plaintiff contacted Defendant on July 27, 2010, and spoke with a representative of Defendant. (Compl. at 1.) Defendant represented to Plaintiff that it would conduct an investigation,

---

2 Exhibits to the Complaint will be referred to as "P. Ex. []."

which would be completed in 15 days and the results would then be provided to Plaintiff. (Compl. at 1.) Plaintiff has not yet received the results of such an investigation. (Compl. at 1.) Defendant has refused to have the information on Plaintiff's credit reports deleted or otherwise changed. (Compl. at 1.) Plaintiff has likewise disputed the past-due payments with the credit reporting agencies. (Compl. at 1.)

    B.    <u>Procedural Background</u>

On August 27, 2010, Plaintiff filed a complaint in this Court. [Dkt. 1.] On September 8, 2010, Plaintiff filed his first Amended Complaint. [Dkt. 2.]

On September 24, 2010, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, the hearing for which was noticed for November 12, 2010. [Dkt. 5, 9.] On October 12, 2010, Plaintiff filed a Response to Defendant's Motion to Dismiss. [Dkt. 10.] The following day, Plaintiff filed a Motion for Leave to Amend his Amended Complaint. [Dkt. 11.] On October 29, 2010, this Court granted leave to file a second amended complaint, thereby rendering Defendant's Motion to Dismiss moot. [Dkt. 13.]

Plaintiff filed his Second Amended Complaint on October 29, 2010 (the "Complaint"). [Dkt. 14.] On November 8, 2010, Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion to Dismiss"). [Dkt. 15.] It included

proper notice pursuant to Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Plaintiff *pro se* did not file a response to Defendant's Motion. The Court will look to Plaintiff's response (the "Opposition") to Defendant's prior motion to dismiss for Plaintiff's arguments in response. [Dkt. 10.] Defendant's Motion to Dismiss is currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by

factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Analysis

Defendant argues that each of Plaintiff's claims should be dismissed as time-barred and, in the alternative, should be dismissed for failing to state a claim upon which relief can be

granted. The Court will address Defendant's argument as to each of Plaintiff's claims in turn.

The Court notes as an initial matter that it construes the *pro se* Complaint in this case more liberally than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Khozam v. LSAA, Inc.*, 2007 WL 2932817 (W.D.N.C. 2007). Further, the Court is aware that "[h]owever inartfully pleaded by a *pro se* plaintiff, allegations are sufficient to call for an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief." *Thompson v. Echols*, No. 99-6304, 1999 WL 717280, at *1 (4th Cir. 1999) (citing *Cruz v. Beto,* 405 U.S. 319 (1972)). Nevertheless, while *pro se* litigants cannot "be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985). Thus, even in cases involving *pro se* litigants, as in here, the Court "cannot be expected to construct full blown claims from sentence fragments." *Id.* at 1278.

A. <u>Fair Credit Reporting Act Claims</u>

Plaintiff alleges that Defendant violated various provisions of the FCRA. Defendant argues that Plaintiff's FCRA claims should be dismissed as time-barred. The Court need not

7

address Defendant's statute of limitations argument. Irrespective of whether the Court were to find that Plaintiff's FCRA claims are time-barred, the Court finds that the claims should otherwise be dismissed. Plaintiff alleges various violations of the FCRA:

- "After being put on notice that the information was inaccurate and the information was in fact inaccurate the Defendant continued reporting the late payment which violated the [sic] section § 623(a)(1)(B)," 15 U.S.C. § 1681s-2(a)(1)(B);
- "Willfully, negligently and knowingly failing to conduct a reasonable investigation after Plaintiff submitted [sic] complaint through credit reporting agencies and directly with defendant [sic] which is in clear violation of Part 616, 617, and 623(a)(8)(E) of the Fair Credit Reporting Act," 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, and 15 U.S.C. § 1681s-2(a)(8)(E);
- "By willfully failing to inform the credit reporting agencies that plaintiff [sic] disputed the accuracy of the information being reported, which is in violation of the Fair Credit Reporting Act 15 U.S.C. Section § [sic] 1681s-2(a)(3) and Part 623(a)(3) of the Fair Credit Reporting Act," 15 U.S.C. § 1681s-2(a)(3) and 15 U.S.C. § 1681s-2(a)(3);
- "By failing to update or correct inaccurate information upon completion of the investigation which is in violation of Part 660.4(e)(4) of the Fair Credit Reporting Act," 16 CFR § 660.4;
- "By willfully failing to provide proper notification after completion of investigation which is in violation of Part 623(a)(8)(E)(iii) of the Fair Credit Reporting Act," 15 U.S.C. § 1681s-2(a)(8)(E)(iii);
- "By willfully failing to complete investigation within the 30 day [sic] timeframe of Part 623(a)(8)(ii) and 15 U.S.C 1681 i(a)(l) of the Fair Credit Reporting Act. See also Part 660.4(e)(3)," 15 U.S.C. § 1681s-2(a)(8)(ii), 15 U.S.C § 1681i(a)(l), and 16 CFR § 660.4(e)(3);
- "By willfully and knowingly failing to ensure the integrity and accuracy of the plaintiff [sic] information which is in violation of Part 660.3 of the Fair Credit Reporting Act," 16 CFR § 660.3;

8

- "By willfully failing to review all relevant information submitted by the plaintiff [sic] which is in violation of Part 623(a)(8)(ii)," 15 U.S.C. § 1681s-2(a)(8)(ii);
- "Willfully reporting information after having reasonable cause to doubt it [sic] accuracy [sic] which is in violation of Part 623(a)(1)(A) and (D) of the Fair Credit Reporting Act," 15 U.S.C. § 1681s-2(a)(1)(A), and 1681s-2(a)(1)(D); and
- "Willfully reporting information after notice and confirmation of errors [sic] which is in violation of Part 623(a)(1)(B) of the Fair Credit Reporting Act," 15 U.S.C. § 1681s-2(a)(1)(B).

(Compl. at 3.) These allegations set forth violations of six subsections of the FCRA: 15 U.S.C. § 1681s-2(a); 15 U.S.C 1681i(a)(l); 15 U.S.C. § 1681n; 15 U.S.C. § 1681o; and 16 CFR § 660.3 and 660.4, both enacted pursuant to 15 U.S.C. § 1681s-2(a)(3) and 15 U.S.C. § 1681s-2(e). (Compl. at 3.) Plaintiff has no private right of action pursuant to any of these sections. Accordingly, Plaintiff's FCRA claims are dismissed.

With respect to Plaintiff's claims pursuant to section 1681s-2(a), "[t]here is no private right of action for violation of 15 U.S.C. § 1681s-2(a)." *Rossman v. Lazarus*, No. 1:08cv316, 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008); *see* 15 U.S.C. §§ 1681s-2(c) and (d). The "FCRA explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008). Plaintiff's Complaint expressly cites to various subsections of 15 U.S.C. §§ 1681s-2(a). (Compl. at 3.) Those claims must therefore be dismissed.

Even liberally construing *pro se* Plaintiff's Complaint and substituting section 1681s-2(b) for Plaintiff's references to section 1681s-2(a), Plaintiff fails to state a claim. To state a claim under section 1681s-2(b), a plaintiff must allege, *inter alia*, that after he or she notified the consumer reporting agency of a dispute, *the agency* notified the defendant furnisher of information of the dispute, after which defendant failed to adequately investigate; notice by a consumer directly to the furnisher of the information *does not* trigger the furnisher's duties under section 1681s-2(b). *Rossman*, 2008 WL 4181195, at *7; *Saunders*, 526 F.3d at 148; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *see also Chiang v. MBNA*, 595 F.3d 26, 30 (1st Cir. 2010), *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009), *Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x 744, 751 (10th Cir. 2009). Plaintiff alleges that he contacted Defendant and certain credit reporting agencies; he does not allege that the credit agencies notified Defendant of his dispute, as required by section 1681s-2(b). Accordingly, Plaintiff would fail to state a claim under section 1681s-2(b).

As to Plaintiff's claim pursuant to section 1681i(a)(1), that section applies to credit reporting agencies, not furnishers of information, such as Defendant. As the text of the section provides, "if the . . . accuracy of any item of

information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, *the agency shall* . . . conduct a reasonable reinvestigation." 15 U.S.C. § 1681i(a)(1) (emphasis added). "Thus, to maintain a cause of action under 15 U.S.C. § 1681i(a)(1)(A), [a plaintiff] must allege, at a minimum, that he brought inaccurate or incomplete information in his file to the attention of a consumer reporting agency which then failed to reasonably reinvestigate the disputed information." *Fiscella v. Intelius, Inc.*, No. 3:10cv186, 2010 WL 2405650, at *3 (E.D. Va. June 10, 2010). As Defendant is not a credit reporting agency under the FCRA, *see* 15 U.S.C.A. § 1681a(f), Defendant cannot violate this section. Accordingly, Plaintiff's claims thereunder are dismissed.

As to Plaintiff's allegations of violations of 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, those provisions do not themselves create duties under the FCRA, but provide causes of action when other provisions of the FCRA are violated. *See* 15 U.S.C. § 1681n ("Any person who willfully fails to comply with any requirement imposed under [15 U.S.C. § 1681] with respect to any consumer is liable to that consumer."); 15 U.S.C. § 1681o ("Any person who is negligent in failing to comply with any requirement imposed under [15 U.S.C. § 1681] with respect to any consumer is liable to that consumer."). As these sections do not

create any duties that can be violated, Plaintiff's claims under these two sections are dismissed.

Plaintiff also alleges violations of 16 CFR § 660.3 and 660.4, both enacted pursuant to 15 U.S.C. § 1681s-2(a)(3) and 15 U.S.C. § 1681s-2(e). 16 C.F.R. part 660 contains regulations enacted by the Federal Trade Commission ("FTC") that establish certain duties on furnishers of credit information after they receive notice of a dispute from a consumer. These new regulations became effective on July 1, 2010, and would perhaps address the scenario in the instant matter. These new regulations, however, do not create a private right of action. By its terms, Part 660 "applies to furnishers of information to consumer reporting agencies that are subject to administrative enforcement of the FCRA by the Federal Trade Commission pursuant to 15 U.S.C. 1681s(a)(1)." 16 C.F.R. § 660.1. Moreover, the regulations were enacted pursuant to 15 U.S.C. § 1681s-2(a)(3) and 15 U.S.C. § 1681s-2(e), both of which are removed from the private enforcement mechanism provided in 15 U.S.C. § 1681n and 15 U.S.C. § 1681o. *See* 15 U.S.C. § 1681s-2(c) ("[S]ections 1681n and 1681o of this title do not apply to any violation of subsection (a) of this section, including any regulations issued thereunder; [or] subsection (e) of this section.") The new FTC regulations contained in 16 C.F.R. 660 do not create a private right of action. Accordingly, Plaintiff's claims under these

regulations are dismissed, without prejudice.

  B. <u>Jurisdiction</u>

Because the Court has dismissed each of Plaintiff's FCRA claims as set forth above, the Court must inquire as to whether it has jurisdiction to hear the remaining claims in this matter. Though not raised by Defendant, the Court notes that it not only has a right but a duty to inquire *sua sponte* into whether subject matter jurisdiction exists if the basis of such jurisdiction appears questionable as in this case. *See Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 621 (4th Cir. 2004), reversed on other grounds by *Lincoln Property Co. v. Roche*, 546 U.S. 81 (2005) ("Because the parties may not waive or consent to federal subject matter jurisdiction-indeed we must raise *sua sponte* if jurisdiction appears questionable.")

This Court has proper federal question jurisdiction pursuant to the FCRA. *See* 15 U.S.C. § 1681p ("An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy."); 28 U.S.C. § 1331. Dismissal of the FCRA claims, however, eliminates federal question jurisdiction. The Court, then, examines whether proper diversity jurisdiction exists in this case.

Federal subject matter jurisdiction exists when there

13

is diversity of citizenship between the parties and more than $75,000 in controversy, pursuant to 28 U.S.C. § 1332.  In this case, the parties appear to be diverse--Plaintiff is a resident of Virginia and, according to Plaintiff's Complaint, Defendant is a corporation with a mailing address in Dallas, Texas.  Plaintiff's Complaint and his Civil Cover Sheet [Dkt. 1-4] submitted with his Complaint, however, demand only $30,000 plus costs, and Plaintiff's Complaint does not allege any larger figure.  Accordingly, the amount in controversy threshold is not met and this Court lacks jurisdiction pursuant to 28 U.S.C. § 1332.

Because there is no basis for diversity jurisdiction, and Plaintiff's dismissed FCRA claims were the sole claim over which this Court had jurisdiction, the Court addresses whether it will exercise supplemental jurisdiction over Plaintiff's Virginia state-law claims under 28 U.S.C. § 1367.  All of Plaintiff's remaining claims are state-law claims arising out of the same operative facts: defamation, breach of contract, negligence, and VCPA.

The doctrine of supplemental jurisdiction provides that federal courts have discretion to retain or dismiss non-federal claims when the federal basis for an action is no longer applicable. *See* 28 U.S.C. § 1367 (codifying *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)).  A district court has

discretion to dismiss a case where the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In the Fourth Circuit, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Courts consider a number of factors in making this discretionary determination: "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1998)). As the *Shanaghan* court states, "the doctrine of supplemental jurisdiction is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Shanaghan*, 58 F.3d at 110 (citations omitted).

Here, the Court has dismissed the claims over which it had federal subject matter jurisdiction. Given the nature of the state law claims at issue and in the interests of comity, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. Therefore, the remainder of Plaintiff's claims are dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court notes that nothing in the record appears to

bar Plaintiff from initiating Virginia state litigation, and therefore Plaintiff is not without a forum in which to seek redress on his claims.

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss Plaintiff's Complaint.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| December 14, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |